Dubeee, C. J.
 

 This is a suit in equity for an account of certain partnership transactions in real estate between tbe complainants and tbe defendant Mantón, and for an injunction to restrain tbe defendants from prosecuting an action at law on a certain contract which tbe complainants claim will be properly embraced and disposed of in tbe partnership account.
 

 Tbe bill shows that in June, 1871, tbe defendant Mantón bad tbe right of purchase or tbe refusal of tbe “ Fisk Farm,” in Cranston, containing about sixty acres, for fifty thousand dollars, five thousand dollars in cash, and forty-five thousand to be secured by mortgage on tbe farm; that be proposed to tbe complainants to buy it on those terms and take tbe deed, and that it should be improved, developed, and sold under the joint management of himself and tbe complainants, and for their joint profit and advantage. Tbe bill further shows that the complainants made the purchase, took the deed, and entered into a written contract with Mantón, by which a copartnership was formed between them for the improvement, platting, and sale of the farm in lots or parcels; that under the contract the complainants were to furnish all the money necessary to pay for the farm, together with all taxes and expenses incurred in disposing of it for
 
 *447
 
 tbe common benefit of themselves and Mantón, and that Mantón was to have one third of the net profits arising from the sale, and to bear one third of the losses, and to use his best endeavors to develop and properly dispose of the farm, so far as he could consistently with his other business, the one third of the profits to be the only compensation for his services. The bill goes on to show what was done in pursuance of the contract down to June 8, 1872, at which time it was estimated that a profit had been realized out of the adventure, and alleges that on that day Mantón, being desirous of having the complainants pay him his share of the estimated profits, amounting to 113,162.50, agreed to take therefor an unsold portion of the farm known as section six, and that thereupon the complainants executed under their hands and seals the following contract, to wit:
 

 “
 
 Know all men by these presents :
 

 That we, John T. Mauran and Amos N. Beckwith, both of Providence, R. I., in consideration of thirteen thousand one hundred and sixty-two dollars and fifty cents ($13,162.50) to us paid by Joseph P. Mantón, of said Providence, do hereby covenant and agree with said Mantón that we will, on the demand of said Mantón, his heirs or assigns, by a good and sufficient deed of warranty, duly made and executed, grant, convey, and confirm to said Mantón, or his legal representatives, or any person or persons whom he or they shall name, in fee simple, that tract of land in Cranston, R. I., laid out and designated as section six on a plan of West Elmwood by J. Howe, 1872, recorded in said Cranston (section six).
 

 “ To the performance of which covenants and agreements we do hereby bind ourselves, our heirs, executors, and administrators.”
 

 The bill shows that, at the time this agreement was given, Mantón delivered to the complainants the following receipt, to wit:
 

 “ $13,162.50.
 

 “ Received, Providence, June 8, A. D. 1872, of John T. Mau-ran and Amos N. Beckwith, thirteen thousand one hundred and sixty-two 50-100 dollars (by contract to convey section six on plan of West Elmwood), on account of my interest in “Fisk
 
 *448
 
 Farm,” so called, in Cranston, R. I., under contract made between them and me relative to the purchase and sale of said farm and subject to the conditions of said contract. Said amount is to bear interest at the rate of seven per cent, per annum until a final settlement between said parties. Mauran and Beckwith may move building standing on said land off from the same.
 

 “ (Signed) Joseph P. MANTON.”
 

 The bill shows that on December 20, 1872, Mantón assigned to the defendant Wilson, for himself and the defendants Stokes, Chatterton, and Barstow, the agreement of June 8, 1872, to secure them as indorsers of two notes for $10,000 each for his, the said Manton’s, benefit.
 

 The bill recounts various demands made by the defendants on the complainants for the conveyance of section six to the defendant Wilson, as assignee of Mantón, and shows that in October, 1877, an action was commenced against the complainants in the name of Mantón, as trustee for the other defendants, for breach of the agreement of June 8, 1872.
 

 It is against the prosecution of this action that the bill prays for an injunction. The ground of the prayer is, that the agreement was in the hands of Mantón, subject to the equities of the copartners, and that being merely a chose in action, it is subject to the same equities in the hands of his assignee, and that therefore the adventure having finally resulted in a loss, the court ought to restrain any action at law upon it, and adjust the rights of all the parties under it in the partnership account.
 

 The primary question in the case, therefore, is, whether the agreement of June 8, 1872, is a matter which will be involved in the copartnership account; for if it is a separate and individual matter, there is no claim that the injunction ought to be granted. The agreement had its origin in the transactions of the copartnership; but from this it does not follow that it is a co-partnership matter. It will be remembered that the conveyance of the “ Fisk Farm ” was taken, not in the name of the three copartners, but in the names of only two of them, to wit: the complainants. The legal title vested wholly in them, and it became clothed with a trust for the copartnership by virtue of the contract of copartnership between them and Mantón. But this
 
 *449
 
 trust, which was thus created or declared by contract, could be modified by contract. For instance, if, after the farm was bought and the contract between the copartners entered into, they had agreed to proceed no farther with the adventure, and thereupon the complainants had agreed to hold a certain section for Mantón as an equivalent for his shore in the adventure, and Mantón had accepted it, we suppose there can be no doubt that the trust for the copartnership would come to an end, and that thenceforward Mantón would have his claim against the complainants as individuals, and not against them as his copartners, for the land which they had agreed to hold for him or to convey to him.
 

 In the case supposed the modification of the trust brings the partnership to an end. But it is not at all essential to the modification that the partnership should come to an end. For instance : if, in the early days of the partnership, Mantón had bought one of the smaller lots into which the “ Fisk Farm ” was divided for five hundred dollars, and paid cash for it, taking from the complainants, however, instead of a deed, a contract to convey the lot, like the contract to convey section six, we think there can be no doubt that the lot by force of the transaction would be entirely divested of the trust for the partnership, and, together with the contract to convey it, would be separated and become an
 
 individual
 
 matter between Mantón and the complainants. The lot itself, and the contract to convey it, would not be involved in the account at the winding up of the partnership, any more than if the sale was to a stranger, but only the five hundred dollars received for it.
 

 Now the case last supposed does not differ from the case at bar, except that, in the case at bar, Mantón, instead of paying cash, gave his receipt to be held subject to the partnership account. But if the complainants, confident of success, were content to take the receipt instead of money, we do not see how that of itself can have any effect to hold either section six or the contract to convey it subject to the equities of the copartners. If Mantón were rich instead of poor, we do not think there would be any claim that section six or the contract to convey it ought to be brought into the partnership account; but, on the contrary, we think the complainants would insist that they were
 
 *450
 
 bolding tbe land
 
 for him
 
 under their contract, discharged of all partnership equities, and that they were simply holding his receipt for the copartnership. We think this, then, would be the correct view, and that it is the correct view now. Section six was in legal effect sold to Manton, June 8, 1872, for his receipt, and the contract given by the complainants to convey it to him was thenceforth an individual matter between him and them. If, since then, they have sold it to somebody else, they have sold it in violation of their contract to Mantón, and must answer for it to him. The partnership has ceased to have any concern in it. It follows that there is no ground for enjoining the action at law, for though the contract to convey section six is a chose in action, and as such passed to the assignee, subject to equities, it passed only subject to such equities, if any, as exist between Mantón and the complainants individually, and not to any equities of the copartners or of the copartnership.
 

 Charles Hart Charles A. Wilson,
 
 for complainants.
 

 Benjamin N. Lapham, Henry J. Spooner Hdward C.
 
 Ames, for respondents.
 

 We have thus decided the most important question which was submitted to us. The bill sets forth, besides this, various troubles and complications which occurred in the prosecution of the joint adventure. In regard to these, certain questions of law and fact have been raised and more or less discussed. The defendant Manton insists that these questions, ought to be decided before the cause is sent to the master for an account; we have come to the conclusion, however, that, inasmuch as the account must finally be taken, it will be better to send the cause to a master at once, with instructions to report the facts and the evidence, if desired, together with his findings thereon, subject, of course, to the right of either party to except to them. This course will bring the matters in controversy before the court in. a manner which will be favorable to their correct decision. Let the decree be drawn accordingly.
 
 Decree accordingly.